UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LARRY McEWEN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:12 CV 2293 DDN |
| | ) |
| MICHAEL BOWERSOX, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM

This action is before the court upon the amended petition of Missouri state prisoner Larry McEwen for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 18.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 13.) For the reasons set forth below, the petition for a writ of habeas corpus is denied.

## I. BACKGROUND

On November 7, 2008, a jury in the Circuit Court of Washington County found petitioner guilty of second degree assault, first degree assault, and two counts of armed criminal action. (Doc. 21, Ex. D at 67-68.) On January 15, 2009, the circuit court sentenced petitioner to two years imprisonment for second degree assault, fifteen years for first degree assault, and three years for each count of armed criminal action, all to be served concurrently. (Id.) On March 23, 2010, the Missouri Court of Appeals affirmed the judgment on direct appeal. (Id., Ex. G); State v. McEwen, 307 S.W.3d 184 (Mo. Ct. App. 2010).

On March 11, 2009, petitioner filed in the circuit court a pro se motion for post-conviction relief under Missouri Supreme Court Rule 29.15. (Doc. 21, Ex. I at 7-13.) Petitioner filed an amended motion for post-conviction relief on May 11, 2010. (Id. at 14-58.)[1] The circuit

---

[1] With the assistance of appointed counsel, petitioner filed a second amended motion for post-conviction relief on July 14, 2010. (Doc. 21, Ex. I at 59-78.) However, petitioner withdrew the second amended motion and refiled the first amended motion on July 19, 2010. (Id. at 3, 59-78.)

court denied petitioner's motion on May 17, 2011. (Id. at 160-73.) On April 17, 2012, the Missouri Court of Appeals affirmed the circuit court's denial of the motion. (Id., Ex. O at 1.); McEwen v. State, 364 S.W.3d 268 (Mo. Ct. App. 2012). On May 9, 2012, petitioner filed a pro se motion for rehearing or transfer to the Missouri Supreme Court. (Doc. 21, Ex. Q at 1-15.) The Missouri Court of Appeals denied the motion as untimely on May 14, 2012. (Id. at 16.)

On December 7, 2012, petitioner commenced this federal action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) On August 2, 2013, plaintiff amended his petition with the assistance of counsel. (Doc. 18.)

In denying petitioner's direct appeal, the Missouri Court of Appeals described the facts, viewed in the light most favorable to the verdict, as follows:

> This case arises out of events that occurred between [petitioner] and his siblings on their father's farm. [Petitioner] is one of six children of Malcolm McEwen ("Father") and Ethel McEwen ("Mother"). Mother recently passed away which led to a strained relationship between the members of the McEwen family. Ron McEwen ("Ron"), [petitioner's] brother, lived on Father's farm, but Father had recently asked Ron to move. Ron had previously had problems with [petitioner] and had obtained an order of protection against him prior to the incident in this case. Because of the move, Ron was selling his cattle and agreed to sell his last two to Keith Miller ("Miller"), who was to pick them up from Father's farm on October 16, 2004.
>
> On October 16, 2004, Ron along with his sister Karen McEwen ("Karen"), who had also had previous problems with [petitioner], arrived at the farm in a van along with Miller who was driving behind in a truck with a cattle trailer hitched to it. As they drove to the cattle on the farm, [petitioner] pulled in front of the van with a tractor. [Petitioner] was armed with a shotgun and pistol, which he showed to Karen and Ron. [Petitioner] led the van and the truck to the cattle, and as they followed, Ron began to videotape what was happening with his camcorder. Eventually [petitioner] pulled the tractor to the side of the path, and let the van pass, but then walked in front of Miller's truck and, while holding the shotgun, ordered Miller to stop. When Karen saw the [petitioner] was stopping Miller, she stopped the van and got out.
>
> [Petitioner] began to yell at Karen, and then pointed his shotgun at her and threatened to shoot her. Karen challenged [petitioner] to go ahead and shoot her. [Petitioner] then lowered the shotgun, pulled an unopened beer bottle out of his pocket and threw it at Karen striking her in the right hip without the bottle breaking. Karen threw the bottle back at [petitioner]. [Petitioner] picked the bottle back up and hit Karen with it, and then struck her with the butt end of his shotgun, causing three fractures in Karen's skull.

[Petitioner] began to walk away, but then turned around and approached Karen again as if to hit her again. Ron got between them, put his camcorder down, and told [petitioner] that Karen needed a doctor. [Petitioner] grabbed the shotgun by the stock and swung it like a baseball bat, and hit Ron in the side of the head with the barrel. [Petitioner] then pulled a pistol out of his back pocket and shot Ron's camcorder. Ron left and called 911.

[Petitioner] then turned the shotgun on Miller and told him to leave. Miller asked [petitioner] to move his tractor so he could turn his truck around. [Petitioner] then told him to get the calves. Miller loaded the calves into his trailer and then drove off. As he left, he told [petitioner] he would call an ambulance for Karen, to which [petitioner] replied, "The bitch is faking." Miller left the property and called the police.

Sheriff's deputies arrived and found Karen still on the ground. They also found the camcorder and the shotgun sitting on the tailgate of a truck nearby. The butt of the shotgun stock had been shattered and the forearm stock had popped off. The pistol was found under a shirt on the passenger seat of the truck with a live round in the chamber and another in the magazine. A fired round and a shell casing were found on the ground. A broken beer bottle and splinters from the stock of the shotgun were also found in the area.

[Petitioner] was arrested and given Miranda warnings. He admitted to the deputies that he struck Ron and Karen and that he shot the camcorder. The cassette in the camcorder was unplayable, but when the spools were replaced by the deputies, the tape was played and found to be blank.

At trial, [petitioner] presented testimony from Stephen and Michael Dosenbach, who were both on the farm the day the events occurred and who both testified that Karen and Ron advanced on [petitioner], and that he struck them in self-defense. [Petitioner] also testified that he was acting in self-defense.

The jury found [petitioner] guilty of assault in the first degree, assault in the second degree, and two counts of armed criminal action. [Petitioner] was sentenced to fifteen years imprisonment for assault in the first degree, two years imprisonment for assault in the second degree, and three years imprisonment each for each count of armed criminal action to run concurrently.

(Doc. 21, Ex. G at 3-5).

## II. PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

Petitioner alleges five grounds for relief in this habeas action:

(1) Trial counsel rendered constitutionally ineffective assistance per se because he was suffering from a mental disorder that profoundly affected his preparation and performance.

> (2) Trial counsel rendered constitutionally ineffective assistance by failing to call Guy Roberts, D.O., to explain petitioner's physical limitations and inability to conduct the alleged attacks.
>
> (3) Trial counsel rendered constitutionally ineffective assistance by failing to properly and fully cross-examine Karen Taylor.
>
> (4) The trial court violated petitioner's right to due process by failing to properly control the cross-examination of petitioner's witness Michael Dosenbach and by allowing improper impeachment of that witness through the testimony of a rebuttal witness.
>
> (5) The prosecution violated petitioner's right to due process by charging a more serious offense because petitioner exercised his right to trial.

(Doc. 18 at 1-7.)

Respondent contends that all grounds are without merit. Respondent further contends that petitioner procedurally defaulted entirely on Grounds 1, 4, and 5 and partially on Ground 3. (Doc. 20 at 12-17.)

### III. EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for claims made in federal habeas corpus petitions filed in district court under 28 U.S.C. § 2254. See 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Given the limitation periods under Missouri law for a motion for rehearing or application for transfer to the Missouri Supreme Court, no proper procedure for litigating his federal habeas claims remains available to petitioner. See Mo. Sup. Ct. R. 83.02 and 84.17 (motions for rehearing and applications for order transferring case from the Court of Appeals to Missouri Supreme Court must be filed within fifteen days of the filing of the memorandum decision disposing of the case).

Exhaustion in the sense that petitioner now has no remaining procedure for bringing a claim to the state court does not, however, satisfy the federal statutory requirement. Rather, a petitioner must have fairly presented the substance of each federal ground to the trial and appellate courts. Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam). If he has not done so

and has no remaining procedure for doing so because he has defaulted on the legitimate requirements of the otherwise available procedures, any such ground for federal habeas relief is barred from being considered by the federal courts. Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc); Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (concluding that petitioner's failure to present a claim on appeal from a circuit court ruling raises a procedural bar to pursuing the claim in a habeas action in federal court). The doctrine of procedural bar applies whether the default occurred at trial, on appeal, or during state court collateral attack. See Murray v. Carrier, 477 U.S. 478, 490-92 (1986).

Petitioner raised Ground 1 in his motion for post-conviction relief (Doc. 21, Ex. I at 20), but he did not present that ground to the Missouri Court of Appeals (Id., Ex. M). Although petitioner raised the ground again in his motion for rehearing or transfer to the Missouri Supreme Court, the Court of Appeals denied the motion as untimely. (Id., Ex. Q.) Due to petitioner's failure to present Ground 1 on appeal, he procedurally defaulted on that ground.

Petitioner raised Ground 2 in his motion for post-conviction relief and presented it to the Missouri Court of Appeals. (Id., Ex. I at 21-22, Ex. M at 27.) Petitioner did not procedurally default on Ground 2.

In Ground 3, petitioner argues that trial counsel failed to properly and fully cross-examine Karen Taylor, citing Taylor's history of violence against her father in addition to her violation of bond conditions on October 16, 2004. (Doc. 18 at 7.) In his motion for post-conviction relief, petitioner raised several grounds for ineffective assistance related to trial counsel's cross-examination of Karen Taylor; however, on appeal, petitioner presented only the ground that trial counsel was ineffective for failing to cross-examine Karen Taylor regarding her bond conditions. (Id., Ex. I at 24-25, 60, Ex. M at 46.) A petitioner procedurally defaults on any specific ineffectiveness claims that are not presented on appeal. See Flieger v. Delo, 16 F.3d 878, 885 (8th Cir. 1994). Accordingly, petitioner procedurally defaulted on any ineffectiveness claims presented in Ground 3 beyond the claim regarding trial counsel's failure to cross-examine Karen Taylor regarding her bond conditions.

Petitioner raised Ground 4 on direct appeal but not before the trial court. (Doc. 21, Ex. E at 27, 35.) The Missouri Court of Appeals found no grounds that a manifest injustice occurred and declined to grant discretionary review for plain error. Because the court did not conduct

plain error review, there was no waiver of procedural default. See Hornbuckle v. Groose, 106 F.3d 253, 257 (8th Cir. 1997); Mack v. Caspari, 92 F.3d 637, 641 (8th Cir. 1996). Because petitioner failed to raise Ground 4 at trial and the Missouri Court of Appeals did not waive procedural default on direct appeal, he procedurally defaulted on Ground 4.

Petitioner first raised Ground 5 in his petition for federal habeas relief and did not present the ground to any state court. Accordingly, petitioner procedurally defaulted on Ground 5.

Nevertheless, petitioner may avoid the procedural bar if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or if he can demonstrate that failure to review the claim would result in a fundamental miscarriage of justice. Maples v. Thomas, 132 S. Ct. 912, 922 (2012); Coleman v. Thompson, 501 U.S. 722, 749-50 (1991). To establish sufficient cause for the procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with a state procedural requirement. Maples, 132 S. Ct. at 922; Coleman, 501 U.S. at 750-52.

To establish actual prejudice, petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (internal citations omitted); see also Charron v. Gammon, 69 F.3d 851, 858 (8th Cir. 1995) (stating that the standard of prejudice to overcome procedural default "is higher than that required to establish ineffective assistance of counsel under Strickland.").

Petitioner argues that the Missouri State Public Defender system caused his procedural default of Grounds 1, 3, and 5 by failing to raise those grounds on appeal. (Doc. 24 at 4.) Federal habeas courts may hear claims procedurally defaulted due to ineffective assistance of counsel in initial post-conviction motion proceedings. Martinez v. Ryan, 132 S. Ct. 1309, 1315 (2012). However, here, the default occurred when petitioner's counsel failed to raise Grounds 1, 3 or 5 in the appeal of the denial of his motion for post-conviction relief. The narrow exception set forth in Martinez does not extend to appellate post-conviction counsel. Arnold v. Dormire, 675 F.3d 1082, 1087 (8th Cir. 2012). Accordingly, the failure of petitioner's counsel to present Grounds 1, 3, and 5 to the Missouri Court of Appeals does not constitute cause for default, and the grounds remain procedurally barred.

Nevertheless, Congress has authorized federal courts to consider and to dismiss the merits of procedurally barred grounds if the court concludes that the grounds are without merit.

28 U.S.C. § 2254(b)(2). The undersigned has considered all of petitioner's federal grounds on their merits.

## IV. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted by a federal court on a claim that has been decided on the merits by a state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Thaler v. Haynes, 559 U.S. 43, 47 (2010) (per curiam) (citation omitted). This standard is difficult to meet because habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (citation omitted). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Thaler, 559 U.S. at 47.

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Wood v. Allen, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011). Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); Wood, 558 U.S. at 293.

The court reviews Grounds 1, 2, and 3 under the AEDPA standard. However, because no state court decided Grounds 4 and 5 on the merits, the pre-AEDPA standard for habeas review

governs. Robinson v. Crist, 278 F.3d 862, 867 (8th Cir. 2002). The pre-AEDPA standard requires de novo review. Worthington v. Roper, 631 F.3d 487, 495 (8th Cir. 2011)

## V. EVIDENTIARY HEARING

Petitioner also requests an evidentiary hearing, specifically to present evidence regarding his trial counsel's mental disorder and failure to investigate the background of Karen Taylor. (Doc. 25.) AEDPA provides that a court shall not hold an evidentiary hearing on a habeas corpus claim unless a petitioner shows that:

> (A) the claim relies on--
>     (i) a new rule of constitutional law, made retroactive to cases on collateral
>     review by the Supreme Court, that was previously unavailable; or
>     (ii) a factual predicate that could not have been previously discovered
>     through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and
> convincing evidence that but for constitutional error, no reasonable factfinder
> would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

None of petitioner's claims rely on a new rule of law or a factual predicate that could not have been previously discovered with due diligence. Further, in his first and second amended pro se motions for post-conviction relief, petitioner argued the same factual predicates that constitute the bases of Grounds 1 and 3. (Doc. 21, Ex. I at 20, 24-25.) Additionally, petitioner deposed his trial counsel with the assistance of appointed counsel prior to the state court's decision on the motion for post-conviction relief. (Doc. 21, Ex. J.) Accordingly, petitioner's request for an evidentiary hearing is denied.

## VI. DISCUSSION

### A. Ground 1

Petitioner argues that his trial counsel suffered from a mental disorder at the time of trial, rendering counsel's assistance constitutionally ineffective. In Strickland v. Washington, the Supreme Court defined ineffective assistance of counsel as arising under the Sixth and Fourteenth Amendments. 466 U.S. 668 (1984). Pursuant to Strickland, petitioners are entitled to federal habeas corpus relief upon a showing that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just

result." Id. at 686. If there is any reasonable argument that the state court decision is consistent with Strickland, then the state court decision must be left undisturbed. Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012).

Petitioner must first demonstrate that counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88. However, there is a strong presumption that counsel has provided constitutionally effective assistance. Id. at 690. Counsel's strategic choices made after thorough investigation are virtually unchallengeable, and decisions following reasonable, but less thorough, investigation are upheld to the extent that they are supported by reasonable judgment. Id. at 690-91.

Petitioner must then demonstrate actual prejudice resulting from counsel's deficient performance. Id. at 687. To show prejudice, petitioner must establish a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 695. The prejudice must be an "actual and substantial disadvantage, infecting [petitioner's] entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982).

Specifically, petitioner states that trial counsel suffered from depression at the time of trial, making him reluctant to "look at certain things that needed to be looked at." Petitioner cites a motion to set aside judgment and order of disbarment that counsel filed in a separate disciplinary action, indicating that counsel suffered "severe mental disorders" from at least January 1, 2007, that caused him to avoid and suppress threatening situations. (Doc. 21, Ex. I at 138.) Petitioner argues that these mental disorders resulted in counsel's deficient preparation for trial. However, the post-conviction motion court held that there was no evidence in the record of counsel's mental disorder at the time of trial:

> The Court watched trial counsel's performance very closely, throughout the trial. Mr. Pennoyer did nothing during the trial to suggest he was suffering [] from any mental disease or disorder. Rather, the Court found him to be attentive, and considered his cross and direct examination of witnesses to be appropriate and consistent with the defenses presented by Defendant. The Court also recalls that, given the relationship of the Defendant to the victims, and the family dynamics in play, the trial involve some very emotional evidence. Trial counsel managed to navigate the two days of trial without any apparent mental, or other problems that the Court could see.

(Doc. 21, Ex. I at 161-62.)

The Eighth Circuit has declined to adopt a rule requiring a per se presumption of prejudice with regard to mental illness. Johnson v. Norris, 207 F.3d 515, 518 (8th Cir. 2000). The record should reflect the errors made by counsel as a result of his mental illness. See id. Petitioner has failed to produce evidence sufficient to rebut the presumption of correctness afforded to state determinations. See 28 U.S.C. § 2254(e)(1). Moreover, petitioner fails to point to any specific conduct affected by trial counsel's alleged mental illness constituting deficient performance.

Accordingly, Ground 1 is without merit.

**B. Ground 2**

In Ground 2, petitioner argues that trial counsel was ineffective for failing to call Guy Roberts, D.O., to testify that petitioner was physically unable to perform the alleged attacks. The Missouri Court of Appeals concluded that petitioner failed to demonstrate deficient performance, noting the risk that Dr. Roberts's testimony would contradict petitioner's statements regarding self-defense, the testimony's limited relevance to the claim of self-defense, and the testimony's cumulative nature. (Doc. 21, Ex. O at 4.) At his deposition, trial counsel testified that he avoided calling Dr. Roberts as a witness due to the risk that Dr. Roberts's testimony would contradict petitioner's testimony that he could not run, retreat, or jump. (Id., Ex. J at 17.) During trial, petitioner testified that he could not run, bend, or squat. (Id., Ex. A at 274.) He further testified that he hit Karen Taylor when she reached for his shotgun and that he hit Ronald McEwen when Ronald quickly advanced on him and that he could not run due to his physical limitations. (Id. at 279-82, 295.) Further, Michael Dosenbach also testified at trial regarding petitioner's physical limitations at the time of the attack. (Id. at 257.)[2] The evidence in the record supports the determination that trial counsel was not deficient for failing to call Dr. Roberts.

Accordingly, the Missouri Court of Appeals did not unreasonably apply federal law, and Ground 2 is without merit.

---

[2]When the witness changed the subject matter of his answer, "The time that when Karen --," the prosecutor objected, because this was not responsive to the question. The trial court sustained the objection. (Id.)

## C. Ground 3

Petitioner argues that trial counsel was ineffective for failing to properly and fully cross-examine witness Karen Taylor, specifically regarding her alleged assault on Malcolm McEwen, restraining orders entered against her and Ronald McEwen, and Karen Taylor's bond conditions.

Petitioner offered a power-of-attorney document, petition for order of protection, and an agreement signed by Malcolm, Larry, Ronald, and Janet McEwen to the motion court in support of his ineffective assistance claim regarding the cross-examination of Karen Taylor. (Doc. 21, Ex. I at 147-57.) The motion court found that the document as described could not have bound Karen Taylor and that the record was irrelevant and inadmissible. (Id. at 181.) The motion court further found that petitioner failed to plead that the bond conditions were in effect on the date of the crime and thereby failed to demonstrate the relevance of such bond conditions. (Id. at 182.) The motion court concluded that trial counsel's failure to introduce inadmissible evidence was not ineffective assistance. (Id.) The Missouri Court of Appeals agreed with the conclusions of the motion court. (Id., Ex. O at 6.) The state appellate court further noted that the jury had heard several accounts of the attack as well as petitioner's self-defense claim and knew of Karen Taylor's prior conviction for second-degree assault. (Id. at 7.) The appellate court concluded that the additional cross-examination of Karen Taylor suggested by petitioner would not have resulted in a different outcome at trial. (Id.)

Petitioner states that Karen Taylor's bond conditions prohibited her from entering Malcolm McEwen's farm, but no such condition appears in any of the documents attached to petitioner's post-conviction motion. (Id., Ex. I at 150-59.) Further, Karen Taylor was not named as a party in the petition for order of protection. (Id.) The jury heard testimony regarding the attack from Karen Taylor, Ronald McEwen, Keith Miller, Stephen Dosenbach, Michael Dosenbach, and petitioner (Id., Ex. A at 114-19, 162-66, 212-17, 230-34, 252-55, 279-82). The jury also heard testimony regarding Karen Taylor's prior convictions, including the conviction for second-degree assault. (Id. at 104-05.)

The lack of any evidence suggesting that Karen Taylor was a party of any order of protection or subject to any bond conditions supports the determination by the state court that the documents cited by petitioner were irrelevant and that trial counsel was not deficient for failing to cross-examine Karen Taylor regarding them. Further, the testimony of several witnesses

regarding the attack, including three witnesses testifying on behalf of petitioner, and the presentation of evidence of Karen Taylor's prior convictions support the Missouri Court of Appeals' determination that additional cross-examination of Karen Taylor suggested by petitioner would not have resulted in a different outcome at trial.

Because neither the post-conviction motion court nor the Missouri Court of Appeals unreasonably applied federal law, Ground 3 is without merit.

**D. Ground 4**

Petitioner argues that the trial court violated his right to due process by failing to properly control the cross-examination of Michael Dosenbach and by allowing improper impeachment through the testimony of a rebuttal witness. To establish a due process violation based on a state court evidentiary ruling, petitioner must show that the alleged violation was "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair." Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995) (internal citation omitted). Petitioner must also show a reasonable probability that, but for the alleged violation, the outcome of the trial would have been different. Id. Whether the evidence was properly admissible under state law is beyond the scope of habeas review. Middleton v. Roeper, 498 F.3d 812, 820 (8th Cir. 2007).

Petitioner argues that the cross-examination and calling of a rebuttal witness to impeach Dosenbach "shift[ed] the focus from the ultimate jury question, acted to deprive [p]etitioner of due process and created a manifest injustice." Even assuming the trial court erred by admitting the impeachment testimony, petitioner fails to demonstrate that the verdict would have been different absent the challenged testimony.

At trial, Michael Dosenbach testified in support of petitioner's claim of self-defense. (Doc. 21, Ex. A at 249-58.) The prosecutor cross-examined Michael Dosenbach as to whether he retired from a position with the Ste. Genevieve County Sheriff's Department or was fired for the mishandling of a female inmate:

> Q. Isn't it true that you were fired from the Ste. Genevieve County Sheriff's Department on March 2, 2001?
> A. No, sir. I had a choice if I wanted to retire and that's what I did, I retired.
> Q. And you were fired for taking a female inmate out to lunch in plain clothes with no cuffs on?
> A. If you want to say that.
> Q. You were fired for that reason.

|   |   |   |
|---|---|---|
| A. | | I had a supervisor with me, sir, and that was his decision, not mine. |
| Q. | | Sir, were you fired from the Ste. Genevieve County Sheriff's Department? |
| A. | | No. I retired. |
| Q. | | And that's your testimony under oath, correct? |
| A. | | Yes, sir. |

(Id. at 262-63.) Later, the prosecution called Sheriff Gary Stolzer twice in rebuttal to testify that he fired Michael Dosenbach. (Id. at 305, 332.) The testimony of Karen Taylor and Ronald McEwen also contradicted Michael Dosenbach's testimony regarding petitioner's self-defense. (Id. at 114-19, 162-66, 212-17.) Because of this substantial evidence contradicting Michael Dosenbach's testimony and supporting the conviction, the court cannot conclude that, absent the alleged violation, the outcome of the trial would have been different.

Accordingly, Ground 4 is without merit.

**E. Ground 5**

Petitioner argues that the prosecution raised the charge from a class B felony to a class A felony as a response to petitioner exercising his right to trial. The record shows that the prosecution initially charged petitioner with a class A felony (Doc. 21, Ex. D at 16). The petitioner implies that the prosecution then offered him a class B felony charge in exchange for a guilty plea, which petitioner declined. (Doc. 24 at 21.) The prosecution ultimately succeeded in convicting petitioner of a class A felony at trial. (Doc. 21, Ex. D at 56-63.)

"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978). However, when the prosecution does no more than present "the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution," the prosecution does not violate the right to due process. Id. at 365. Petitioner fails to argue that the prosecution's conduct exceeded the confines of that which Bordenkircher expressly allows.

Petitioner next argues that the prosecutor improperly implored the jury, in sentencing petitioner, to consider petitioner's "behavior and actions" during the trial. During closing argument, the prosecutor stated that petitioner "couldn't even . . . answer his attorney's questions before . . . going off the wall" or "behave in [the] courtroom." (Doc. 21, Ex A at 391.) Jury sentencing, based on the jury's assessment of the evidence and demeanor and character of the accused, is a legitimate practice under federal constitutional law and Missouri law. Chaffin v.

Stynchcombe, 412 U.S. 17, 32 (1973); Young v. State, 547 S.W.2d 146, 148 (Mo. Ct. App. 1976). Thus, petitioner's argument fails to demonstrate prosecutorial error.

Ground 5 is without merit.

## VII.  CONCLUSION

For the reasons stated above, the petition of Larry McEwen for a writ of habeas corpus is denied.

Because petitioner has made no substantial showing that he was deprived of a constitutional right, a certificate of appealability is denied.  28 U.S.C. § 2253(c)(2).

An appropriate Judgment Order is issued herewith.


    /S/   David D. Noce    
**UNITED STATES MAGISTRATE JUDGE**

Signed on  May 16, 2014.